1  Shane V. Hapuarachy, CSB #271887
2  **CHEONG, DENOVE, ROWELL**
   **BENNETT & HAPURACHY**
   **A Law Partnership including Professional Corporations**
3  1925 Century Park East, Suite 800
   Los Angeles, California 90067
4  (310) 277-4857   Fax No.: (310) 277-5254
   Email: firm@cdrbh.com
5
   Mark Waecker, CSB #81375
6  **LAW OFFICES OF MARK WAECKER**
   633 West Fifth Street, 28th Floor
7  Los Angeles, CA 90071
   (213) 955-4500   Fax No.: (213) 955-4560
8  Mark@waeckerlaw.com
9  Attorneys for Plaintiff **DANA TOMPKINS BARNETT**
10
                   UNITED STATES DISTRICT COURT
11
                   CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| 13  DANA TOMPKINS BARNETT, individually, and as Successor in Interest of the Estate of JEFFREY BARNETT, deceased, | Civil Action No.: |
| | **COMPLAINT FOR DAMAGES**: |
| 15 | |
| 16        Plaintiffs, | **(1)    DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, WRONGFUL DEATH;** |
| 17  v. | |
| 18  COUNTY OF LOS ANGELES; ALEX VILLANUEVA; JONATHAN E. SHERIN, M.D., PH.D.; and DOES 1 through 10, inclusive, | **(2)    DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, - MONELL VIOLATIONS;** |
| 19 | **(3)    DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, SUPERVISORY LIABILITY;** |
| 20        Defendants. | |
| 21 | **(4)    NEGLIGENCE;** |
| 22 | **(5)    VIOLATION OF GOVERNMENT CODE §845.6 -FAILURE TO PROVIDE IMMEDIATE MEDICAL CARE;** |
| 24 | |
| 25 | **(6)    VIOLATION OF THE ADA, 42 U.S.C. § 12101, and CALIFORNIA UNRUH ACT, CIVIL CODE §51** |
| 27 | PLAINTIFF DEMANDS TRIAL BY JURY |

1

Plaintiff, DANA TOMPKINS BARNETT, individually, and as Successor in Interest of the Estate of JEFFREY BARNETT, deceased, alleges as follows:

### I. JURISDICTION AND VENUE

1. This action is brought by Plaintiff DANA TOMPKINS BARNETT, individually, and as Successor in Interest of the Estate of JEFFREY BARNETT, deceased, pursuant to 42 U.S.C. §1983.

2. This Court has jurisdiction under 28 U.S.C. §1343(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. §1983, and under 28 U.S.C. §1331.

3. The acts and omissions complained of commenced on an unknown date in 2019 and continued until April 6, 2019, within the Central District of California. Therefore, venue lies in this District pursuant to 28 U.S.C. §1391.

4. Plaintiff timely filed an administrative claim with the County of Los Angeles pursuant to Cal. Gov't Code §910. The claim was denied on October 16, 2019.

### II.  PARTIES

5. DANA TOMPKINS BARNETT is Decedent's sole heir at law by virtue of her common law marriage to Decedent pursuant to the laws of the State of Texas, the residence of Plaintiff and Decedent.  She brings this claim for herself personally, as Jeffrey Barnett's successor in interest and heir, as the personal representative of the estate, and, as applicable, pursuant to California Code of Civil Procedure §§377.30 and 377.60 .

6. Defendant COUNTY OF LOS ANGELES is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of California. The Los Angeles County Sheriff's Department, the Los Angeles County Department of Mental Health, and the Los Angeles County Medical Services Bureau are, and at all times herein alleged were, agencies of the County of Los Angeles.

7.     Defendant Sheriff ALEX VILLANUEVA at all times relevant herein was Sheriff for Los Angeles County and in charge of Los Angeles County Jail, including Twin Towers Correctional Facility ("TTCF"), where Decedent resided at the time of his death. By California law, the Sheriff is answerable for the safekeeping of inmates in his custody. Cal. Gov't Code §§26605, 26610; Cal. Pen. Code §4006. VILLANUEVA was responsible for the management and control of all Los Angeles County Jails, was responsible for the administration of TTCF; for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the TTCF, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff, and supervisors; and for the implementation of policies and procedures at TTCF. He was responsible for the care, custody and control of all inmates housed in TTCF, including Decedent. VILLANUEVA was regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the jails, jail suicides, and other violations involving the housing, care, mental health care, and treatment of inmates at TTCF. Pursuant to California law and his duties as the Sheriff of Los Angeles County, VILLANUEVA is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others. VILLANUEVA's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Decedent.

8.     Defendant JONATHAN E. SHERIN, was at all times mentioned herein the Director of Los Angeles County Department of Mental Health ("DMH") and in charge of Jail Mental Health SHERIN was responsible for the management

1    and administration of mental health services of the TTCF; for the selection,

2    promotion, supervision, training, discipline and retention of mental health workers

3    working within the TTCF, including counselors, nurses, doctors, physician

4    assistants, mental health staff and supervisors; and for the implementation of

5    mental health policies and procedures at TTCF. SHERIN was regularly provided

6    with reports concerning the treatment of mentally ill inmates, jail suicides, and

7    other violations involving the mental health care and treatment of inmates at

8    TTCF. Pursuant to California law and his duties as the Director of the Department

9    of Mental Health of Los Angeles County, SHERIN is sued in his individual

10   capacity, as a supervisor for his own culpable action or inaction in the training,

11   supervision or control of his subordinates, or his acquiescence in the constitutional

12   deprivations which this Complaint alleges, or for conduct that showed reckless or

13   callous indifference for others. SHERIN's affirmative conduct involves his

14   knowing failure to ensure enforcement of policies, rules or directives that set in

15   motion a series of acts by others which he knew or reasonably should have known

16   would cause others to inflict a constitutional injury on Eric Loberg.

17        9.    Defendant DOE 1 was at all times mentioned herein a treating

18   psychiatrist for Decedent in the Los Angeles County Jails and responsible for

19   providing competent mental health and medical care, treatment and follow-up care

20   to Decedent. Defendant DOE 1 is sued in his individual capacity.

21        10.   Plaintiff is informed and believe and thereon allege that Defendants

22   sued herein as DOES 2 through 10, inclusive, were employees of the County of

23   Los Angeles, including but not limited to deputies and civilian staff of the Los

24   Angeles County Sheriff s Department, employees of the Department of Mental

25   Health, and employees of the Medical Services Bureau, and were at all relevant

26   times acting in the course and scope of their employment and agency. Each

27   Defendant is the agent of the other. Plaintiffs allege that each of the Defendants

28   named as a "DOE" was in some manner responsible for the acts and omissions

1 | alleged herein, and Plaintiffs will ask leave of this Court to amend the Complaint
2 | to allege such names and responsibility when that information is ascertained.

3 | ### III.  GENERAL ALLEGATIONS

4 |      11.    Plaintiff is informed and believes, and thereon allege, that, at all
5 | times herein mentioned, each of the Defendants was the agent and/or employee
6 | and/or co-conspirator of each of the remaining Defendants, and in doing the things
7 | hereinafter alleged, was acting within the scope of such agency, employment
8 | and/or conspiracy, and with the permission and consent of other co-Defendants.

9 |      12.    Each paragraph of this complaint is expressly incorporated into each
10 | cause of action which is a part of this complaint.

11 |      13.    The acts and omissions of all Defendants were engaged in
12 | maliciously, callously, oppressively, wantonly, recklessly, and with deliberate
13 | indifference to the rights of Plaintiff.

14 | ### IV.  SPECIFIC ALLEGATIONS

15 |      14.    On or about April 6, 2019, Decedent JEFFREY BARNETT was
16 | booked into the Los Angeles County Jail Inmate Reception Center ("IRC"). On
17 | information and belief, arresting and/or custodial officers were aware that
18 | Decedent had mental health issues and had attempted suicide less than six months
19 | earlier. On information and belief, Decedent was gravely disabled and the
20 | arresting officers communicated this information to the Los Angeles County
21 | Sheriff's Department ("LASD") verbally and in writing via Decedent's arrest form
22 | and/or other documents.

23 |      15.    During booking at IRC, LASD was required to administer a
24 | "Medical/Mental Health Intake Screening" survey, which would have included a
25 | suicide risk assessment. On information and belief, Decedent advised LASD that
26 | he was taking psychiatric medication, had mental health problems, had been
27 | hospitalized for a recent prior suicide attempt, and had received mental health
28 | services.

16.    On information and belief, Decedent received of monitoring or assessment by LASD, was deprived of the necessary medication to manage his psychiatric disabilities, despite being placed in circumstances with a high risk for psychiatric decompensation, and received no mental health evaluation or treatment, despite his known history of suicidal tendencies.

17.    While Decedent was in its custody, Defendants failed to take well-established, necessary precautions to prevent unsupervised access to the means to commit suicide by hanging. Defendants fully on notice Decedent's history of serious mental illness requiring close observation, combined with his pattern of unpredictable and desperate behavior, failed to take appropriate measures to monitor Decedent, particularly when Decedent was placed in circumstances indicating a high risk for psychiatric decompensation in custody. On information and belief, Defendants permitted Decedent to be alone in a cell/room unrestrained and/or unmoitored, and deprived of his necessary medication.

18.    On information and belief, DMH and custodial personnel failed to take well-established, suicide and self-harm prevention measures, the need for which they were on notice of given behavior indicating a clear decompensation of Decedent's mental health status during his incarceration at TTCF and/or clear indications of increased risk for self-injury or suicide.

19.    On April 6, 2019, Decedent fashioned a ligature and hung himself while in custody.

## V. PARTICIPATION, STATE OF MIND AND DAMAGES

20.    All Defendants acted without authorization of law.

21.    Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each Defendant ratified, approved or acquiesced in the violations alleged herein.

22.    As joint actors with joint obligations, each Defendant was and is

1    responsible for the failures and omissions of the other.

2        23.    Each Defendant acted individually and in concert with the other

3    Defendants and others not named in violating Plaintiffs' rights.

4        24.    Each Defendant acted with a deliberate indifference to or, reckless

5    disregard for, an accused's rights for adequate mental health care in a custodial

6    facility.

7        25.    As a direct and proximate result of the aforesaid acts, omissions,

8    customs, practices, policies and decisions of the Defendants, Decedent suffered

9    great fear, physical and mental suffering, anguish, confusion, anxiety,

10   nervousness, and ultimately, loss of life during the time period in which LASD,

11   Department of Mental Health and the Medical Services Bureau failed to provide

12   appropriate psychiatric care and treatment for his urgent psychiatric condition, and

13   in particular, suffered acute and unmitigated mental and physical suffering during

14   the hours preceding his suicide on April 6, 2019.

15       26.    As a direct and proximate result of the aforesaid acts, omissions,

16   customs, practices, policies and decisions of the Defendants, Plaintiff has suffered

17   great mental and physical pain, suffering, anguish, fright, nervousness, anxiety,

18   shock, humiliation, indignity, embarrassment, harm to reputation, and

19   apprehension, which have caused Plaintiff to sustain damages in a sum to be

20   determined at trial.

21       27.    Due to the acts of the Defendants, Plaintiff has suffered, and continue

22   to suffer, and is likely to suffer in the future, extreme and severe mental anguish as

23   well as mental and physical pain and injury. For such injury, Plaintiff will incur

24   significant damages based on psychological and medical care.

25       28.    As a further result of the conduct of each of these Defendants,

26   Plaintiff has been deprived of familial relationships, including the loss of her

27   husband, JEFFREY BARNETT, and the emotional impact on her family unit as a

28   whole.

29. The aforementioned acts of the Defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard or with deliberate indifference to the constitutional rights of the Plaintiff, entitling Plaintiff to exemplary and punitive damages from each defendant other than Defendant COUNTY in an amount to be proven at the trial of this matter.

30. By reason of the above described acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiffs that they might vindicate the loss and impairment of his rights, and by reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure § 1021.5 and any other applicable provision of law.

## FIRST CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS — 42 U.S.C. §1983: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND SAFETY

(Against All Defendants and DOES 1-10, Except Defendant COUNTY)

31. Plaintiffs reallege paragraphs 1 through 30, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

32. Plaintiffs are informed and believe, and based on such information and belief, allege that Defendants acted with deliberate indifference for Decedent's serious medical needs and safety, in that they failed to provide adequate psychiatric assessment, treatment and intervention; inappropriately failed to monitor and medicate despite clear indications that he required more intensive treatment and supervision; ignored and/or failed to reasonably monitor, to provide security, and to prevent Decedent from committing harm to himself; failed to provide medically- indicated psychiatric care and assessment; and ignored his serious but treatable mental health condition. Due to Defendants' deliberate

1  indifference to the serious nature and life threatening condition of Decedent, and

2  their failure to timely intervene to provide reasonable security, monitoring and

3  safety, and psychiatric medical intervention necessary to prevent his efforts to

4  harm himself, Decedent suffered preventable serious injury and harm by hanging

5  himself on April 6, 2019.

6      33.    Decedent was subjected to deprivation of rights by these

7  Defendants and DOES 1 through 10, and each of them, acting under color of law

8  and of statutes, ordinances, regulations, customs and usages of the Law of United

9  States, State of California, which rights included, but are not limited to, privileges

10  and immunities secured to Decedent by the Fourteenth or Eighth Amendments to

11  the United States Constitution and laws of the United States, and particularly: a)

12  his right to access to mental health and medical care and treatment for his serious

13  but treatable condition; b) his right to adequate, reasonable security, monitoring,

14  supervision, classification and housing for his mental health and medical

15  disabilities, each of which was also a cause of his serious injury and harm.

16      34.    Plaintiff DANA TOMPKINS BARNETT alleges that these

17  Defendants' wrongful conduct legally caused a deprivation of her constitutionally

18  protected liberty interest in familial companionship, love and society of her

19  husband, all to her damage in an amount to be proven at trial according to proof.

### SECOND CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS -- 42 U.S.C. §1983

### (Against Defendant COUNTY) — MONELL VIOLATIONS

23      35.    Plaintiff realleges paragraphs 1 through 34 as well as any subsequent

24  paragraphs contained in the complaint, as if fully set forth herein.

25      36.    Plaintiffs are informed and believe and thereon allege that, at all

26  times herein mentioned, Defendants COUNTY OF LOS ANGELES, with

27  deliberate indifference, and conscious and reckless disregard to the safety, security

28

9

1  and constitutional and statutory rights of Decedent, engaged in the

2  unconstitutional conduct and omissions as is specifically elaborated hereinabove.

3       37.    Plaintiff is informed and believes, and thereon alleges, that, at all

4  times herein mentioned, Defendant COUNTY OF LOS ANGELES, Los Angeles

5  Sheriff's Department, and DMH, with deliberate indifference, and/or conscious or

6  reckless disregard to the safety and constitutional rights of Decedent, and other

7  inmates with severe mental health conditions, maintained, enforced, tolerated,

8  ratified, permitted, acquiesced in, and/or applied policies, practices and customs,

9  including, but not limited to: failure to provide adequate mental health services;

10  failure to mitigate or eliminate known environmental, suicide hazards prevalent

11  throughout jail housing areas, including housing areas to which inmates with

12  serious mental illness are assigned; failure to provide appropriate custodial

13  supervision of inmates with mental health conditions — despite known suicide

14  hazards; failure to ensure that mental health housing and treatment spaces meet

15  minimum safety design standards for facilities in which persons with serious

16  mental illness are held; failure to ensure sufficient treatment space and staffing

17  necessary to provide adequate mental health care; inadequate intake screening and

18  assessment for housing placement; inadequate monitoring and assessment of

19  inmates' mental health conditions; insufficient mechanisms to ensure

20  communication of relevant information between custodial, medical and mental

21  health staff; failure to ensure appropriate suicide intervention measures; and,

22  failure to ensure adequate training of correctional staff in suicide prevention and

23  responding to mental health care crises.

24       38.    Plaintiff is informed and believes, and thereon alleges, that, at all

25  times herein mentioned, individual Defendants' wrongful conduct was the result of

26  policies, practices and customs to subject inmates of the Los Angeles County Jails

27  to unconstitutionally inadequate treatment for inmates with mental health

28  conditions; permit and promote unsafe conditions for inmates leading to a

1  heightened risk of suicide; and cover-up incidents of unconstitutional behavior by

2  members of its LASD custody staff, Medical Services Bureau and Department of

3  Mental Health.

4       39.    At all times herein mentioned, the County of Los Angeles and its

5  Sheriff's Department, the Medical Services Bureau, and the Department of Mental

6  Health authorized and ratified the wrongful acts of the individual Defendants. The

7  actions and inactions of the LASD including it custody staff, the Medical Services

8  Bureau, and the Department of Mental Health were known or should have been

9  known to the policy makers responsible for the COUNTY, and occurred with

10  deliberate indifference to either the recurring constitutional violations elaborated

11  above, and/or to the strong likelihood that constitutional rights would be violated

12  as a result of failing to train, supervise or discipline in areas where the need for

13  such training and supervision was obvious.

14       40.    The actions of the LASD including it custody staff, the Medical

15  Services Bureau, and the Department of Mental Health set forth herein were a

16  motivating force behind the violations of Plaintiff's and Decedent's constitutional

17  rights as set forth in this complaint.

18       41.    As a direct and proximate result of Defendant COUNTY OF LOS

19  ANGELES' policies, practices, and customs, Plaintiff sustained injury and damage

20  in an amount to be proved.

21       42.    As a result of Defendants', and each of their, violations of Plaintiff's

22  and Decedent's constitutional rights as set forth herein, Plaintiff was damaged as

23  alleged above

24

25

26  **THIRD CLAIM FOR RELIEF**

27  **DEPRIVATION OF CIVIL RIGHTS — 42 U.S.C. § 1983**

28  **FAILURE TO SUPERVISE, TRAIN AND TAKE CORRECTIVE**

## MEASURES CAUSING CONSTITUTIONAL VIOLATIONS

### (Against Supervisory Defendants and DOES 1-10 Except Defendant COUNTY)

43.     Plaintiff realleges paragraphs 1 through 42, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

44.     Plaintiff is informed and believes and thereon alleges that Defendants VILLANUEVA, SHERIN, and DOES 1-10 knew, or in the exercise of reasonable care, should have known of a history and propensity and pattern at the time of this incident for employees of the Los Angeles County Jail to fail to provide reasonable security, monitoring and supervision of inmates such as Decedent; to fail to comply in implementing policies and procedures or ensuring the enforcement thereof; to fail to train and ensure that deputies, employees and medical care providers provide reasonable security and monitoring of inmates, such as Decedent; and that they provide prompt and competent access and delivery of mental health attention and intervention when inmates, such as Decedent, were having a mental health crisis requiring prompt intervention. Defendants' disregard of this knowledge or failure to adequately investigate and discover and correct such acts or failures to act was a moving force which caused the violation of Plaintiffs' constitutional rights.

45.     Plaintiff is informed and believes and thereon alleges that prior to the incident alleged herein, Defendants VILLANUEVA, SHERIN, and DOES 1-10, acting under the color of their authority as supervisory officers of deputies, counselors, physicians, nurses, staff and all mental health and medical care providers, and in the course and scope of their employment as such, committed similar acts of:

a.      Failure to provide access to and delivery of mental health and medical care and treatment for inmates at Los Angeles County with known mental disabilities;

b. Failure to provide adequate housing and properly classify inmates in the Los Angeles County Jails so that they would have access to and delivery of indicated mental health and medical care;

c. Failure to provide adequate and reasonable monitoring and housing for inmates that present a risk of suicide to prevent mental health disasters such as attempted suicides and suicides;

d. Failure to supervise their subordinates to ensure that staff, deputies and employees were implementing and complying with implementing policies and procedures to ensure the reasonable security and safety of inmates;

e. Discriminating against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

46. Plaintiff is further informed and believes and thereon alleges that Defendants VILLANUEVA, SHERIN, and DOES 1-10, knew, or in the exercise of reasonable care should have known, of this pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these Defendants and DOES 1-10 had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate or instruct deputies, counselors, physicians and nurses, and/or agents or employees, and to retain deputies, counselors, physicians and nurses who had a history of inappropriate conduct, and as a result Decedent was harmed in the manner threatened by the pattern or practice.

47. At all times herein mentioned, and prior thereto, Defendants had the duty to perform the following, and violated that duty:

a.     To train, supervise, and instruct deputies, counselors, nurses, physician assistants, physicians, and other agents to ensure that they respected and did not violate federal and state constitutional and statutory rights of inmates;

b.     To objectively investigate incidents of in-custody injury, deaths, suicides and suicide attempts, inadequate classification and contraindicated housing, and to take remedial action;

c.     To provide access to and delivery of mental and medical health care, intervention, treatment, follow-up, and attention to injured, ill or potentially suicidal inmates, the lack of which resulted in serious injury or loss of life, and to provide access and delivery of competent mental and medical health care;

d.     To periodically monitor an inmate's serious mental health and medical condition and suicide prevention, the lack of which may result in serious injury or loss of life;

e.     To periodically monitor the quality and adequacy of mental health and medical care, attention and treatment provided to mentally ill inmates;

f.     To periodically monitor the competency of medical and custodial staffing to ensure that custodial deputies and staff were complying with reasonable security to inmates with mental health disabilities at Los Angeles County Jails;

g.     To periodically monitor the classification and housing of mentally ill inmates to ensure they have reasonable security and safety and are properly housed, and not housed with or exposed to persons with known dangerous propensities;

h.     To comply with the statutory guidelines and regulations enacted for the protection of inmates held in a custodial setting;

i.     To discipline and to establish procedures to correct past violations, and to prevent future occurrences of violation of constitutional rights of inmates, by not condoning, ratifying, and/or encouraging the violation of Decedent's and other inmate's constitutional rights;

1       j.    To periodically train custodial staff and counselors on understanding,

2   recognizing, reporting and responding to issues of inmates' mental health care and

3   treatment; and

4       k.    Not to discriminate against inmates with known mental health

5   disabilities by use of a disciplinary system that increases incarceration and

6   imposes punishment for behavior resulting from or caused by their mental health

7   disability.

8       48.    As a legal result of the conduct of Defendants VILLANUEVA,

9   SHERIN, and DOES 1-10, as described above, Plaintiff was damaged as alleged

10  herein and as set forth above.

## FOURTH CLAIM FOR RELIEF

### NEGLIGENCE/WRONGFUL DEATH

### (Against All Defendants and DOES 1-10, Except Defendant COUNTY)

14      49.    Plaintiff realleges paragraphs 1 through 48, as well as any

15  subsequent paragraphs contained in the complaint, as if fully set forth herein.

16      50.    Defendants and DOES 1-10, had a duty to provide reasonable

17  security and render access and delivery of mental and medical care, treatment

18  and/or emergency services to Decedent for his mental health condition but

19  breached their duty and were negligent in the performance of their duties and this

20  negligence caused the death of Decedent.

21      51.    Defendants and DOE supervisors 1-10, acting within the course and

22  scope of their employment with the LASD, the Department of Mental Health and

23  the Medical Services Bureau had a duty to assure the competence of their

24  employee/agents. Defendants and DOES 1-10, but breached their duty and were

25  negligent in the performance of their duties by selecting, hiring, training,

26  reviewing, periodically supervising, failing to supervise, evaluating the

27  competency and retaining their Defendant deputies, counselors, physicians and/or

28  employees and/or agents. This breach of the duty of careful selection, hiring,

training, review, supervision, periodic evaluation of the competency, and retention of such officers, counselors and other staff created an unreasonable risk of harm to persons such as Decedent.

52.    The individually named Defendants breached their duty of care to observe, report, monitor and provide reasonable security regarding Decedent's condition and failed to prevent his suicide.

53.    As a direct and legal result of the aforesaid negligence, carelessness and lack of skill of Defendants, and each of them, and as a result of their breach of duty of care to Decedent, he was injured due to a serious but treatable mental health condition and Plaintiffs have suffered the damages as alleged above.

54.    As a legal result of the aforesaid negligence and deliberate indifference of Defendants, Decxedent's trauma and injuries and/or suicidal ideation condition did not receive timely, appropriate and indicated intervention and treatment and his condition worsened and resulted in his suicide, and he suffered serious injury and harm as a legal cause of the negligent conduct of Defendants, thereby causing damage as alleged above.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA GOV'T CODE § 845.6

### (Against All Defendants Except Defendant COUNTY)

55.    Plaintiff realleges paragraphs 1 through 54, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

56.    By virtue of the foregoing, Defendants, including but not limited to representatives of the LASD, the Department of Mental Health the Medical Services Bureau knew or had reason to know that Decedent needed intensive medical care and that he had serious and obvious mental and medical conditions that put the staff on notice that he should have had his medical and mental condition closely monitored, going forward from April 2019; that he should have been prevented from unsupervised and unrestrained access to materials that could

1   be used to cause him injury; that on or before April 6, 2019 he needed immediate
2   medical care and was not given such care. The failure to provide immediate
3   medical care and mental health care, where his health and mental condition were
4   deteriorating, proximately caused his suicide.

5                          <u>**SIXTH CLAIM FOR RELIEF**</u>

6            **VIOLATION OF AMERICANS WITH DISABILITIY ACT (ADA),**

7   **TITLE II, 42 U.S.C. §12101 et seq., THE REHABILITATION ACT, 29 U.S.C. §794,**

8            **AND CALIFORNA UNRUH ACT, CAL. CIVIL CODE §§51, et seq.**

9                             **(Against All Defendants)**

10          57.   Plaintiffs reallege paragraphs 1 through 56, as well as any
11   subsequent paragraphs contained in the complaint, as if fully set forth herein.

12          58.   Decedent, JEFFREY BARNETT, was a "qualified individual," with
13   a mental impairment that substantially limited his ability to care for himself and
14   control his mental, medical or physical health condition as defined under the
15   Americans with Disabilities Act (ADA), 42 U.S.C. §12131 (2), under Section 504
16   of the Rehabilitation Act of 1973 (RH), 29 U.S.C. §794 and Cal. Civ. Code §51, et
17   seq., and qualified as an individual with a disability under California law, and he
18   met the essential eligibility requirements of the County of Los Angeles' and Los
19   Angeles Sheriffs Department's programs to provide mental/medical health care
20   services for its inmate patients in the Los Angeles Sheriffs Department.

21          59.   Defendant Los Angeles COUNTY and its jails and mental health
22   services are a place of public accommodation and a covered entity for purposes of
23   enforcement of the ADA, 42 U.S.C. §12131 (2), under Section 504 of the
24   Rehabilitation Act of 1973, and Cal. Civ. Code §51, seq., as covered by the
25   regulations promulgated under each of these laws.

26          60.   Defendant Los Angeles County mental health services "engaged in

27

28

17

the business of . . . health care," custody for persons whose "operations" fall
within the definition of "program or activity" covered by the Rehabilitation Act,
29 U.S.C. Section 794(b).

61.   Under the ADA, Los Angeles County is mandated to "develop an
effective, integrated, comprehensive system for the delivery of all services to
persons with mental disabilities and developmental disabilities. . ." and to ensure
"that the personal and civil rights" of persons who are receiving services under its
aegis are protected.

62.   Congress enacted the ADA upon a finding, among other things, that
"society has tended to isolate and segregate individuals with disabilities" and that
such forms of discrimination continue to be a "serious and pervasive social
problems." 42 U.S.C. §12101(a)(2).

63.   Los Angeles COUNTY is mandated under the ADA not to
discriminate against any qualified individual on the basis of disability in the full
and equal enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a).

64.   Defendant Los Angeles COUNTY receives federal financial
assistance for their jails, and therefore must comply with the mandates of the
Rehabilitation Act, §504, which specifies that "program or activity" means all of
the operations of ... A department, agency, special purpose district, or other
instrumentality of a State or of a local government.

65.   Defendant Los Angeles COUNTY and other Defendants violated the
ADA and the RA and Cal. Civ. Code §51, et seq., and deprived Decedent and
Plaintiff of their federally and state protected rights by: (a) creating and
maintaining a number of programs and services to protect the mentally disabled
that operate in conjunction with Los Angeles COUNTY's jails; (b) failing to
provide services or accommodate Decedent with access to the programs and
services of Los Angeles COUNTY'S designated mental health facilities within Los

18

1  Angeles County Jails for persons who qualify for access and services under
2  California and federal law; (c) failing to provide services or accommodate
3  Decedent as indicated and with appropriate classification, housing and monitoring
4  for a person in their sole and exclusive custody who they knew was mentally
5  disabled; (d) failing to provide reasonable accommodations to people in custody
6  with mental disabilities at their jails, and providing instead quality of care and
7  service that is different, separate, and worse than the service provided to other
8  individuals with the same disabilities; (e) failing to properly train its deputies,
9  medical and mental health staff, employees and officers on how to peacefully
10  respond, treat, and interact with disabled persons, such as Decedent; and (f) failing
11  to comply with the U.S. Department of Justice requirements regarding care,
12  treatment and security to persons with mental disabilities, resulting in
13  discrimination against Decedent, under the ADA and RA.

14       66.    Decedent was denied the benefits of the services, programs, and
15  activities of Los Angeles COUNTY which deprived him of mental health and
16  medical health programs and services which would have provided the delivery of
17  treatment, follow-up and supervision. This denial of programs and services was
18  the result of his disability in that he was discriminated against because he was
19  mentally ill and disabled, in that he suffered from conditions in which a person, as
20  a result of a mental disorder, is unable to provide for his basic personal needs and
21  to protect himself from self-harm. Defendants' failure to train their employees, and
22  the denial of mental and medical health care, treatment, follow-up, training,
23  supervision was result in the violation of Plaintiffs' constitutional rights.

24       67.    As a legal result of the acts and misconduct of the Defendants and
25  each Defendant complained of herein, Decedent JEFFREY BARNETT died and
26  Plaintiff has suffered, are now suffering and will continue to suffer damages as
27  alleged herein.

28

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff DANA TOMPKINS BARNETT requests relief on her own behalf, and on behalf of the estate of JEFFREY BARNETT, as follows, and according to proof, against each Defendant:

1.      General and compensatory damages in an amount according to proof;

2.      Special damages in an amount according to proof;

3.      Exemplary and punitive damages against each Defendant, except the COUNTY OF LOS ANGELES, in an amount according to proof;

4.      Costs of suit, including attorneys' fees, under 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5 and any other applicable provision of law; and,

5.      Such other relief as may be warranted or as is just and proper.

Respectfully submitted,

March 16, 2020

CHEONG, DENOVE, ROWELL, BENNETT & HAPUARACHY

By:_____
Shane V. Hapuarachy
CHEONG, DENOVE, ROWELL, BENNETT & HAPUARACHY
1925 Century Park East, Suite 800
Los Angeles, California 90067
(310) 277-4857   Fax No.: (310) 277-5254
shapuarachy@cdrbh.com; firm@cdrbh.com