O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA TOMPKINS BARNETT, individually, and as Successor in Interest of the Estate of JEFFREY BARNETT, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; ALEX VILLANUEVA; JONATHAN E. SHERIN, M.D., Ph.D.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-02530-ODW (ASx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT [15]** |

## I.  INTRODUCTION

Plaintiff Dana Tompkins Barnett ("Ms. Tompkins" or "Plaintiff"), individually and as successor in interest to the estate of Jeffrey Barnett ("Mr. Barnett" or "Decedent"), brings this action against the County of Los Angeles (the "County"),

Sherriff Alex Villanueva, and Dr. Jonathan E. Sherin, M.D., Ph.D.[1] for violations of federal and state law stemming from Mr. Barnett's suicide while incarcerated at a Los Angeles County Jail (the "Jail"). (Compl. ¶¶ 5–9, 14, ECF No. 1.) The County now moves to dismiss Plaintiff's second and sixth claims under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss ("Mot."), ECF No. 15.) For the following reasons, the Court **GRANTS** the County's Motion.[2]

## II. BACKGROUND

On or about April 6, 2019, Decedent was booked in the Los Angeles County Jail Inmate Reception Center ("IRC"). (Compl. ¶ 14.) Plaintiff alleges on information and belief that the custodial officers were aware "Decedent had mental health issues and had attempted suicide less than six months earlier" and that "Decedent was gravely disabled." (Compl. ¶ 14.) During Decedent's booking at IRC, the Los Angeles County Sheriff's Department ("LASD") was required to administer a "Medical/Mental Health Intake Screening" survey, including a suicide risk assessment. (Compl. ¶ 15.) Plaintiff alleges that Decedent informed LASD that "he was taking psychiatric medication, had mental health problems, had been hospitalized for a recent prior suicide attempt, and had received mental health services." (Compl. ¶ 15.)

Plaintiff alleges on information and belief that Decedent was not properly monitored, was deprived of his necessary psychiatric medication, and received no mental health services despite his known history of suicidal tendencies. (Compl. ¶ 16.) The County allegedly failed to take appropriate measures to monitor Decedent, in part by permitting Decedent to be left alone in a cell or room, unrestrained and unmonitored. (Compl. ¶ 17.) Plaintiff also alleges that Department of Mental Health and custodial personnel "failed to take well-established, suicide and self-harm

---

[1] Pursuant to the Parties' joint stipulation, Dr. Sherin has since been dismissed from this action without prejudice. (Order, ECF No. 23.)

[2] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

prevention measures," despite having been placed on notice of Decedent's mental health status. (Compl. ¶ 18.) Also on April 6, 2019, Decedent fashioned a ligature and hanged himself while in custody. (Compl. ¶ 19.)

Plaintiff commenced this action on March 17, 2020. (*See generally* Compl.) Plaintiff asserts six claims for relief in total, but only Plaintiff's second and sixth claim are directed towards the County: (2) Deprivation of Civil Rights under 42 U.S.C. § 1983: *Monell* violations; and (6) Violation of Americans with Disabilities Act, Title II, 42 U.S.C. § 12101 *et seq.* ("ADA"), Rehabilitation Act, 29 U.S.C. § 794 ("RA"), and California Unruh Act, California Civil Code §§ 51, *et seq.* ("Unruh"). (Compl. ¶¶ 31–67.) The County now moves to dismiss these claims.

## III.   LOCAL RULE 7-3

As an initial matter, Plaintiff claims that the County failed to meaningfully comply with Local Rule 7-3's meet and confer obligation prior to filing its Motion. (Opp'n to Mot. ("Opp'n") 5–6, ECF No. 18.) The County maintains that a single email, with no effort to follow up via email or phone, constitutes sufficient compliance. (Reply in Supp. of Mot. ("Reply") 7, ECF No. 19.) Not so. Plaintiff is not blameless either, however, as she admits to receiving the meet and confer correspondence at some point shortly before the filing deadline, yet she made no effort to discuss the merits of the Motion with the County. (Opp'n 5–6.)

Compliance with the District's Local Rules is not optional. *See, e.g.*, *Lopez v. Wells Fargo Bank, N.A.*, No. SACV 16-01409 AG (KESx), 2016 WL 6088257, at *2 (C.D. Cal. Oct. 17, 2016) ("Local Rule 7-3 isn't just a piece of petty pedantry put down to trip up lawyers. Nor is Local Rule 7-3 a mere formalism simply there to be checked off by lawyers."). Moving forward, the Court will require strict compliance with Local Rule 7-3.

## IV.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal

theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## V.   DISCUSSION

The County moves to dismiss Plaintiff's second and sixth claims. For the reasons discussed below, the Court **GRANTS** the County's Motion.

### A. Plaintiff's *Monell* Claim

In her second claim, Plaintiff brings a survivor claim under 42 U.S.C. § 1983 and *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). (Compl. ¶¶ 35–42.) The County moves to dismiss this claim for (1) failing to comply with California Code of Civil Procedure sections 377.30, *et seq.*; and (2) failing to state a claim under Rule 12(b)(6).

*1.   California Code of Civil Procedure § 377.30, et seq.*

Although California Code of Civil Procedure section 377.30 is a state procedural rule, a plaintiff bringing a § 1983 survival action as the successor in interest may only proceed if she meets the requirements of California law. *See Tatum v. City and Cty. of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006). Thus, to commence an action as a successor in interest, a plaintiff must execute an affidavit stating, *inter alia*, (1) the decedent's name; (2) the date and place of decedent's death; (3) an assertion that "[n]o proceeding is now pending in California for administration of the decedent's estate"; (4) an assertion that the declarant "is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in the action or proceeding," or is otherwise authorized to act on behalf of the decedent's successor in interest; and (5) an assertion that "[n]o other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding." *King v. United States*, No. 5:15-cv-00753 CAS (DTBx), 2016 WL 146424, at *5 (C.D. Cal. Jan. 11, 2016) (quoting Cal. Civ. Proc. Code §§ 377.32(a), (b)).

The County insists that Plaintiff's second claim must fail because she failed to attach the required affidavit to her Complaint. (Mot. 13.) However, Plaintiff filed the required affidavit after the Motion was filed, and it appears to comply with each of the requirements of section 377.32. (*See* Decl. of Dana Tompkins Barnett ("Tompkins Decl."), ECF No. 17.) Plaintiff therefore argues that any argument based on section 377.32 is now moot. (Opp'n 7.) On reply, the County does not challenge whether the

Tompkins Declaration meets the requisite standards; it simply argues that the declaration should be disregarded as a belated attempt to meet the requirements. (Reply 8.) The Court disagrees. In the interest of judicial economy, the Court does not dismiss Plaintiff's second claim on this ground.

### 2. *Requirements for a Monell Claim*

The County also argues that Plaintiff's *Monell* claim lacks facts sufficient to state a claim. Section 1983 allows for a civil action against any person who, under color of law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. While the statute does not define "person" or address whether a governmental unit may be sued under its provisions, the United States Supreme Court in *Monell* held that a local government may be sued under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Thus, to hold a municipality liable for the actions of its officers and employees, a plaintiff must allege one of the following: "(1) that a [municipal] employee was acting pursuant to an expressly adopted official policy; (2) that a [municipal] employee was acting pursuant to a longstanding practice or custom; or (3) that a [municipal] employee was acting as a 'final policymaker.'" *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Additionally, under some circumstances, a municipality can be held liable for failure to train its police officers. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). However, a governmental unit may not be liable under § 1983 simply based on a "respondeat superior theory." *Monell*, 436 U.S. at 691.

Here, the County argues that Plaintiff's second claim under 42 U.S.C. § 1983, based on a *Monell* theory of liability, fails to state a claim for multiple independent reasons. The Court addresses the County's arguments in turn.

a. <u>Unconstitutional Policy, Custom, or Practice</u>

First, the County argues that Plaintiff fails to allege facts that demonstrate the existence of an unconstitutional policy, custom, or practice of deliberate indifference. (Mot. 14–15 (citing *Mendy v. City of Freemont*, No. C-13-4180 MMC, 2014 WL 574599 (N.D. Cal. Feb. 12, 2014)). The Court agrees. "To survive a motion to dismiss, a plaintiff must do more than allege that a *Monell* defendant 'maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs' alleged elsewhere in the complaint." *Cain v. City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (C.D. Cal. Oct. 4, 2017) (quoting *A.E. ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (discussing pleading standard for *Monell* claims)). "Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (i.e. excessive force) is insufficient." *Id.*

Here, Plaintiff admits that there are factual allegations missing from her Complaint, yet she maintains that paragraphs 33, 37, and 39 provide enough factual detail to state a claim.[3] (Opp'n 9–10.) The Court disagrees. Plaintiff alleges nothing beyond the notion that the County maintained or permitted policies, practices, and customs of knowingly permitting the occurrence of the type of wrongs alleged elsewhere in the Complaint. For example, Plaintiff claims the County should be liable for having a policy, practice, or custom of "failure to provide adequate mental health services" and "inadequate monitoring and assessment of inmates' mental health conditions." (Compl. ¶ 37.) Plaintiff's allegations are conclusory and merely state the subject matters to which the alleged policies relate. *See Cain*, 2017 WL 4410116, at *3; *A.E.*, 666 F.3d at 637.

Accordingly, Plaintiff fails to plead facts sufficient to show the existence of a practice, custom, or policy giving rise to *Monell* liability.

---

[3] The Court notes that Plaintiff offers little argument other than quoting the language from her Complaint in footnotes and offering a string of citations suggesting that the Court should not dismiss a *Monell* claim at the pleading stage. (Opp'n 7–10.).

b. <u>Ratification</u>

Second, the County argues that Plaintiff fails to state a claim for ratification. (Mot. 15–16.) To proceed on a *Monell* theory premised upon ratification, a plaintiff may show either (1) that "the decision-making official was, as a matter of state law, a final policymaking authority 'whose edicts or acts may fairly be said to represent official policy' in the area of decision, or (2) that an official with final policymaking authority . . . delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002) (internal citations and quotation marks omitted). Moreover, "[t]he policymaker must have knowledge of the constitutional violation and actually approve of it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

Here, nothing in the Complaint demonstrates that any policymakers knew of Decedent's death or approved any decision that led to it. (*See* Mot. 16.) Plaintiff baldly asserts that paragraphs 7, 8, and 39 of the Complaint sufficiently allege that Sheriff Villanueva and Dr. Sherin[4] were the policymakers for the County at the time of Decedent's death. (Opp'n 10–11.) However, Plaintiff alleges only that Sheriff Villanueva was in charge of personnel at the Jail, including custodial and medical staff, and that he was ultimately responsible for the well-being of the inmates in the Jail, including Decedent. (Compl. ¶ 7.) These facts do not establish that Sheriff Villanueva knew of any constitutional violations with respect to Decedent, nor do they establish that he actually approved of such violations. Accordingly, Plaintiff's *Monell* claim fails insofar as it is based on a theory of ratification. *See Lytle*, 382 F.3d at 987.

c. <u>Failure to Train</u>

Third, the County argues that Plaintiff's *Monell* claim fails to the extent it is based on a failure to train theory. (Mot. 16–17.) Only in limited circumstances can a government's decision not to train employees rise to the level of an official policy or custom under § 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Thus, to

---

[4] As previously noted, the Court here focuses solely on allegations pertaining to Sheriff Villanueva.

establish a *Monell* claim based on a failure to train, a plaintiff must allege facts demonstrating that the government acted with "deliberate indifference to the rights of the persons with whom the [untrained employees] c[a]me into contact." *Id.* (quoting *Canton*, 489 U.S. at 388). And ordinarily, a *Monell* claim based on a failure to train theory must set forth a "pattern of similar constitutional violations." *Id.* at 62; *see also NeSmith v. Cty. of San Diego*, No. 15cv629 JLS (JMA), 2016 WL 4515857, at *15–16 (S.D. Cal. Jan. 27, 2016) (finding even generalized information on suicide rates in a county jail insufficient to establish a pattern of deliberate indifference).

Here, again with bare analysis, Plaintiff submits that paragraph 39 of her Complaint sufficiently alleges a failure to train. (Opp'n 11.) Not so. Paragraph 39 is conclusory and devoid of factual allegations relating to any training County employees did or did not receive. Plaintiff merely alleges that violations "were known or should have been known to the policy makers responsible for the C[ounty], and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train." Such conclusory statements are insufficient. *See Cain*, 2017 WL 4410116, at *3; *A.E.*, 666 F.3d at 637. Moreover, Plaintiff fails to allege a pattern of deliberate indifference—the Complaint identifies no other instances of inmate suicide to indicate that a failure to train was so prevalent that it amounted to deliberate indifference. *See Connick*, 563 U.S. at 62. Thus, Plaintiff's *Monell* claim fails to the extent it relies on a failure to train theory.

In summary, Plaintiff fails to plead sufficient facts to state a viable *Monell* claim under any of the above theories.[5] The Court therefore **GRANTS** the County's Motion as to Plaintiff's second claim under *Monell*.

---

[5] The County also argues that Plaintiff's *Monell* claim fails because she fails to allege facts plausibly showing the County's policies were the factual and proximate cause of her injuries. (Mot. 17.) Because the Court finds that Plaintiff fails to plead facts establishing the presence of an official policy, custom, or practice or, alternatively, a ratification or a failure to train, the Court need not reach the issue of causation.

### C. Plaintiff's ADA, RA, and Unruh Claim

Plaintiff's sixth claim for relief alleges that the County is liable for violations of the ADA, the RA, and the Unruh Act. (Compl. ¶¶ 57–67.) As a preliminary matter, Plaintiff concedes that a prison does not fall within the definition of a "business establishment" for the purposes of the Unruh Act and has therefore agreed to dismiss that claim. (Opp'n 15.) To the extent Plaintiff's sixth claim is based on violations of the Unruh Act, it is **DISMISSED without leave to amend.**

As to the remainder of Plaintiff's sixth claim, Title II of the ADA states, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA bars public entities, including prisons, from both discriminating against disabled persons and "excluding the disabled from participating in or benefitting from a public program, activity, or service 'solely by reason of disability.'" *Lee*, 250 F.3d at 690–91; *see also Pierce v. Cty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008) ("It is undisputed that Title II applies to the . . . jails' services, programs, and activities for detainees."). Similarly, § 504 of the RA states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). As Title II of the ADA was expressly modeled after § 504 of the RA, the analysis of the rights and obligations under the two statues is largely identical. *See Pierce*, 536, F.3d at 1216 n.27.

With respect to a correctional facility, a plaintiff may allege disability discrimination by pleading "either (i) discrimination based on disparate treatment or impact, or (ii) denial of reasonable modifications or accommodations." *Atayde v. NAPA State Hosp.*, 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017) (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086 (9th Cir. 2004)). To show disparate

treatment, the plaintiff must allege that other non-disabled individuals without the plaintiff's disability were treated more favorably. *Id.* (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265–66 (9th Cir. 2004)). To show disparate impact, a plaintiff must allege that a facially neutral policy has a significantly adverse or disproportionate impact on disabled persons. *Id.* (citing *Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1148 n.11 (N.D. Cal. 2016)). And to show failure to accommodate, a plaintiff must allege that public entity knew of the plaintiff's disability but failed to provide reasonable accommodations. *Id.* (citing *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (9th Cir. 2007)). "A correctional facility's 'deliberate refusal' to accommodate plaintiff's disability-related needs violates the ADA and the RA." *Id.* (citing *United States v. Georgia*, 546 U.S. 151, 157 (2006)).

Here, the thrust of Plaintiff's claim is that the County knew about Decedent's disabilities and medical needs yet denied Decedent all medical treatment. (Opp'n 13–14.) However, Plaintiff's Complaint includes no facts to support these conclusory allegations made only on information and belief. (*See* Compl. ¶¶ 14–19; 65–66.) Plaintiff's allegations focus on the events of one day, April 6, 2019, and Plaintiff wholly fails to identify how or when any of the Defendants learned of Decedent's medical needs. *See Palacios v. Cty. of San Diego*, No. 20-cv-450-MMA (DEB), 2020 WL 4201686, at *14 (S.D. Cal. Jul. 22, 2020) (finding allegations of deliberate denial or outright refusal to provide medical services over the course of one day to be insufficient to state a claim under the ADA). Plaintiff offers information in her Opposition that, if true, may shed some light on the County's knowledge of Decedent's condition in the days and weeks prior to his suicide. (*See* Opp'n 3.) But those facts are not properly before the Court because they are found nowhere in the Complaint. "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Bastidas v. Good Samaritan Hosp. LP*, No. 13-cv-04388-SI, 2014 WL 6900051, *4 n.3 (N.D. Cal. Dec. 8, 2014) (collecting cases).

1 Considering only the allegations in the Complaint, Plaintiff's sixth claim fails to raise a right of relief above the speculative level because she offers only conclusory allegations with insufficient factual support. *See Twombly*, 550 U.S. at 555; *Sprewell*, 266 F.3d at 988.

As Plaintiff fails to plead facts that show that the County deliberately precluded Decedent from receiving necessary medication because of his disability, the Court **GRANTS** the County's Motion as to Plaintiff's sixth claim for relief under the ADA and the RA.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the County's Motion and **DISMISSES** Plaintiff's second and sixth claims for relief. To the extent Plaintiff's sixth claim relies on the Unruh Act, it is dismissed **without leave to amend** because the Court finds that amendment would be futile. However, the Court finds that amendment would not be futile as to Plaintiff's second claim and the remainder of Plaintiff's sixth claim; therefore, the Court **GRANTS leave to amend** as to those claims. Plaintiff may file an amended complaint no later than 21 days from the date of this order.

**IT IS SO ORDERED.**

September 3, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**