O

# United States District Court
# Central District of California

DANA TOMPKINS BARNETT, individually, and as Successor in Interest of the Estate of JEFFREY BARNETT, deceased,

                Plaintiff,

      v.

COUNTY OF LOS ANGELES; ALEX VILLANUEVA; JONATHAN E. SHERIN, M.D., Ph.D.; and DOES 1 through 10, inclusive,

                Defendants.

Case No. 2:20-cv-02530-ODW (ASx)

**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT [30] [36]**

## I.   INTRODUCTION

Plaintiff Dana Tompkins Barnett, individually and as successor in interest to the estate of Jeffrey Barnett ("Decedent"), brings this action against Defendants County of Los Angeles ("County") and Sherriff Alex Villanueva for violations of federal and state law stemming from Decedent's suicide while incarcerated at a Los Angeles County Jail.  (First Amended Compl. ("FAC") ¶¶ 5–9, 16–21, ECF No. 25.)   The

County moves to dismiss Plaintiff's second and sixth claims, and Villanueva moves to dismiss Plaintiff's first, third, fourth, fifth, and sixth claims.  (Cty. Mot. Dismiss ("Cty. Mot."), ECF No. 30; Villanueva Mot. Dismiss ("Villanueva Mot."), ECF No. 36.)   Both Motions are fully briefed.  (*See* Cty. Mot.; Opp'n Cty. Mot., ECF No. 32; Reply Cty. Mot., ECF No. 33; Villanueva Mot.; Opp'n Villanueva Mot., ECF No. 38; Reply Villanueva Mot., ECF No. 39.)  For the following reasons, Villanueva's Motion is **GRANTED in part** and **DENIED in part**, and the County's Motion is **DENIED**.[1]

## II.   BACKGROUND[2]

On March 15, 2019, Decedent was booked into the Men's Central Jail ("MCJ") in Los Angeles, California.  (FAC ¶ 13.)  At the time of his arrest, Decedent "was suffering from serious mental illness and required psychotropic medications."  (*Id.*)  When booked, Decedent completed a medical history which detailed his mental illness, his use of psychotropic medications, and a prior suicide attempt that had resulted in a coma.  (*Id.* ¶¶ 13–14.)   Furthermore, Defendants "knowingly and willfully deprived [Decedent] of his medications . . . despite the fact that he showed severe signs of mental deterioration." (*Id.* ¶ 15.)

On April 6, 2019, Decedent was booked into the Los Angeles County Jail Inmate Reception Center ("IRC").  (*Id.* ¶ 16.)  At the time, the Los Angeles County Sheriff's Department ("LASD") were informed by "arresting and/or custodial officers . . . that Decedent had mental health issues and had attempted suicide less than six months earlier," and that "Decedent was gravely disabled."  (*Id.*)   During Decedent's booking at IRC, LASD was required to administer a "Medical/Mental Health Intake Screening" survey.  (*Id.* ¶ 17.)  That screening "would have included a

---

[1] After considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] For purposes of these Rule 12(b)(6) Motions, the Court takes all of Plaintiff's well-pleaded allegations as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

suicide risk assessment." (*Id.*)  However, LASD did not properly monitor Decedent, deprived him of his necessary psychiatric medication, and provided no mental health evaluation or services.   (*Id.* ¶ 18.)[3]   Further, Defendants failed "to prevent unsupervised access to the means to commit suicide by hanging" and "permitted Decedent to be alone in a cell/room unrestrained and/or unmonitored, and deprived of his necessary medication." (*Id.* ¶ 19.)  Then, while in custody on April 6, 2019, Decedent fashioned a ligature and hanged himself. (*Id.* ¶ 21.)

Defendant Villanueva, a Los Angeles County Sheriff, headed the Jail where Decedent was held at the time of his death. (*Id.* ¶ 7)  Villanueva was responsible for management of the facility and all employee-related matters within it.   (*Id.*) Villanueva "was regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the jails, jail suicides, and other violations involving the housing, care, mental health care, and treatment of inmates." (*Id.*)  According to Plaintiff, Villanueva "knowing[ly] fail[ed] to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Decedent." (*Id.*)

Lastly, Plaintiff alleges that several investigations, conducted by the United States Department of Justice ("DOJ") over the past few decades, indicate that Defendants maintain a "practice, custom, and policy of providing inadequate mental health care and suicide prevention measures." (*Id.* ¶¶ 22–27.)  Plaintiff alleges that "[d]espite the DOJ's findings and recommendations over the years, LA County

---

[3] Plaintiff states in paragraph 18 of the FAC that "Decedent received **of** monitoring or assessment by LASD, was deprived of the necessary medication to manage his psychiatric disabilities, despite being placed in circumstances with a high risk for psychiatric decompensation, and received no mental health evaluation or treatment, despite his known history of suicidal tendencies." (FAC ¶ 18 (emphasis added)).  Given the context of the paragraph's allegations, the Court reads the insertion "received of" to be a typographical error on the part of Plaintiff.  Construed otherwise, the paragraph would allege that Decedent both received and was denied monitoring and assessment.  *See Resnick v. Hayes*, 213 F.3d 433, 447 (9th Cir. 2000) ("[A]ll allegations of material fact are accepted as true and should be construed in the light most favorable to [the] plaintiff.").

continues to have a practice, custom, and policy of providing inadequate mental health care and suicide prevention measures to those in custody as evidenced by the increase in suicide rates in recent years." (*Id.* ¶ 27.)

Plaintiff asserts six claims for relief, based on: (1) § 1983 liability for deliberate indifference to serious medical needs and safety; (2) § 1983 liability against the County under *Monell*; (3) § 1983 liability for failure to supervise, train and take corrective measures causing constitutional violations; (4) negligence/wrongful death; (5) violation of California Government Code section 845.6; and (6) violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("RA").[4] (*See id.*)  Now, the County and Villanueva separately move to dismiss these claims under Rule 12(b)(6). (*See* Cty. Mot.; Villanueva Mot.)

### III.    LOCAL RULE 7-3

For the second time in these proceedings, the County has failed to comply with Local Rule 7-3's meet and confer obligation prior to filing its motion.  (*See* Opp'n Cty. Mot. 5.)  Yet again, this has resulted in the parties bickering over the meet and confer process, and again, the Court is forced to address this elementary procedural issue.  The County emailed Plaintiff regarding its anticipated motion on October 9, 2020, and again on October 13, 2020. (Reply Cty. Mot. 2.)  On October 14, 2020, the parties finally met and conferred telephonically, unsuccessfully, and the County filed its motion later that day.  (*Id.*)  Apparently, the parties further met and conferred on October 22, 2020, *after* the County's Motion was filed.  (*Id.*)

The County has failed to comply with Local Rule 7-3.  Local Rule 7-3 unambiguously states, "In all cases not listed as exempt . . . counsel contemplating the filing of any motion shall first contact opposing counsel to discuss *thoroughly*, preferably in person, the substance of the contemplated motion and any potential

---

[4] Claims one, three, four, and five are directed against Villanueva and ten unnamed Doe defendants.  Claim two is directed against the County.  And claim six is directed against all Defendants. (*See* FAC.)

resolution.  The conference shall take place *at least seven (7) days prior to the filing of the motion*."  C.D. Cal. R. 7-3 (emphases added).  The County's first attempt to meet and confer was less than seven days before it filed its motion.

Similarly, although the issue was not raised by Plaintiff, Villanueva failed to comply with Local Rule 7-3 in the same way.  With respect to Villanueva's Motion, telephonic conferences occurred on November 2, 2020 and November 4, 2020.  (Villanueva Mot. 2.)  The Motion itself was filed on November 5, 2020.  (*Id.*)  Again, this was not seven days.

Compliance with the District's Local Rules is not optional.  *See Lopez v. Wells Fargo Bank, N.A.*, No. SACV 16-01409 AG (KESx), 2016 WL 6088257, at *2 (C.D. Cal. Oct. 17, 2016) ("Local Rule 7-3 isn't just a piece of petty pedantry put down to trip up lawyers.  Nor is Local Rule 7-3 a mere formalism simply there to be checked off by lawyers.").  "The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002).  This includes discretion to deny a motion that fails to comply.  *See U.S.A. v. Kan-Di-Ki LLC*, No. CV 10-965-JST (RZx), 2013 WL 12147597, at *1 (C.D. Cal. Mar. 21, 2013).

The Court already warned the County that "[m]oving forward, the Court will require strict compliance with Local Rule 7-3."  (Order Granting Mot. Dismiss Compl. 3, ECF No. 24.)  Yet the County failed to strictly comply with Local Rule 7-3 in bringing its motion.  This is the first reason the County's Motion is **DENIED**.[5] Although Villanueva shares the same counsel as the County, the Court acknowledges Villanueva's Motion is the first such motion brought by this Defendant.  Thus, rather than denying Villanueva's Motion outright, this shall serve as Villanueva's first and only warning that the Court will continue to strictly enforce Local Rule 7-3 moving forward.

---

[5] Notwithstanding this basis for denial, the County's Motion also fails on the merits, as detailed *infra*.

## IV.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).   To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).   The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.   A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679 (9th Cir. 2001).   However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A court dismissing a complaint should provide leave to amend if the complaint could be saved by amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also* Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires.").   Reasons to deny leave to amend include "bad faith, undue delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilly Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

# V.   DISCUSSION

Because the County and Villanueva move to dismiss separately, the Court examines their motions in turn.

## A.   Villanueva's Motion to Dismiss

Villanueva moves to dismiss all claims against him, namely Plaintiff's first, third, fourth, fifth, and sixth claims.

### 1.   *Section 1983 Liability: Deliberate Indifference (Claim 1)*

First, Plaintiff brings a survivor claim under 42 U.S.C. § 1983 for deliberate indifference to Decedent's medical needs in violation of the Fourteenth Amendment. (FAC ¶¶ 39–42.)  Villanueva moves to dismiss under Rule 12(b)(6).

Section 1983 allows for a civil action against any person who, under color of law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."   42 U.S.C. § 1983.   The Fourteenth Amendment's Due Process Clause gives pre-trial detainees the right to "adequate" mental health care. *NeSmith v. Cty. of San Diego*, No. 15cv629 JLS (JMA), 2016 WL 4515857, at *4 (S.D. Cal. Jan. 27, 2016) (citing *Doty v. Cty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994)); *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).   A defendant is liable for violating § 1983 where, in light of that right, the defendant was deliberately indifferent towards an individual's "serious medical needs."   *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).   "A heightened suicide risk . . . is a serious medical need."   *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010) (citing *Doty*, 37 F.3d at 546), *vacated*, *City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part*, *Conn v. City of Reno*, 658 F.3d 897 (9th Cir. 2011).

"To show deliberate indifference, the plaintiff must demonstrate that (1) the defendant purposefully acted or failed to respond to the incarcerated individual's pain or possible medical need and (2) that this indifference caused the incarcerated individual harm."   *NeSmith*, 2016 WL 4515857, at * 5 (citing *Jett*, 439 F.3d at 1096).

This is an objective standard, which hovers at a level "more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).   In *Gordon*, the Ninth Circuit articulated the following:

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.*   "More generally, deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment . . . .'" *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096).   "The rule . . . is clear: a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition." *Sandoval*, 985 F.3d at 679–80.

Further, courts "have long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributable to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).   Liability as a supervisor under § 1983 attaches where the defendant was either personally involved with the constitutional violation or there is a sufficient causal connection between their conduct and the constitutional violation.   *Id.* at 1207; *see Redman v. Cty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) ("[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.   The law clearly allows actions against supervisors under section 1983 as long as a sufficient

causal connection is present and the plaintiff was deprived under color of law of a federally secured right." (quoting *McClelland v. Facteau*, 610 F.2d 693, 695 (10th Cir. 1979))).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (internal citations omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted)). "To establish that a supervisor was deliberately indifferent to the actions of his subordinates, a plaintiff must allege sufficient facts to plausibly establish the defendant's knowledge of and acquiescence in the unconstitutional conduct of his subordinates." *Wishum v. Brown*, No. 14-cv-01491-WHO, 2015 WL 1408095, at *2 (N.D. Cal. Mar. 27, 2015) (internal quotation marks omitted) (quoting *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012)).

Here, the Court finds Plaintiff has pled sufficient facts showing Villanueva plausibly knew of and acquiesced in the unconstitutional conduct of his subordinates. Although Plaintiff asserts Villanueva's involvement in generalities, (*see* Villanueva Mot. 5–7; FAC ¶ 7), allegations of a Sheriff's "knowledge of the unconstitutional conditions in the jail, including [Sheriff's] knowledge of the culpable actions of his subordinates, coupled with his inaction, amount[s] to acquiescence in the unconstitutional conduct of his subordinates." *Starr*, 652 F.3d at 1208. Indeed, "under California law, 'the sheriff is required by statute to take charge of and keep the county jail and the prisoners in it, and is answerable for the prisoner's safekeeping.'" *Id.* (quoting *Redman*, 942 F.2d at 1446).

Additionally, Plaintiff identifies several systematic problems of which Villanueva was allegedly aware.  (FAC ¶¶ 22–26); *see Starr*, 652 F.3d at 1216 (reversing dismissal where plaintiff alleged that defendant "was given notice, in several reports, of systematic problems in the county jails under his supervision that have resulted in these deaths and injuries").  Indeed, the FAC lists five specific investigations and reports of systematic issues in the Jail, all of which plausibly suggest the existence of widespread constitutional deprivations, and all of which Villanueva allegedly had knowledge by virtue of his position as Sheriff.  (FAC ¶¶ 22–26.)  Plaintiff also alleges that "well-established" prevention measures existed to prevent the constitutional deprivation that occurred and staff did not follow them, though the exact details of what these measures consisted of or why they were not followed is absent from the FAC.  (*Id.* ¶¶ 19–20.)

Taking these factual assertions as true, and drawing all reasonable inferences therefrom, the Court is left with the impression that the FAC "contain[s] sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216.  Thus, to the extent Villanueva moves to dismiss Plaintiff's first claim, Villanueva's Motion is **DENIED**.

### 2. *Section 1983 Liability: Failure to Train (Claim 3)*

Plaintiff third claim is a § 1983 survivor claim against Villanueva for failure to supervise, train, and take corrective measures causing constitutional violations.  (FAC ¶¶ 51–56.)  Villanueva moves to dismiss this claim under Rule 12(b)(6).  (Villanueva Mot. 7–8.)  Plaintiff concedes she has failed to allege sufficient facts to support her third claim.  (Opp'n Villanueva Mot. 9.)  Therefore, Villanueva's Motion is **GRANTED** as to Plaintiff's third cause of action, which is **DISMISSED**.

Notably, Plaintiff requests "leave to amend at a later time should additional facts become available through discovery."  (*Id.*)  This request is purely speculative and at best, premature.  Although Plaintiff may seek leave to amend if such leave becomes warranted, the Court does not grant leave to amend at this time.

### 3. *Negligence (Claim 4)*

With her fourth claim, Plaintiff claims Villanueva breached a duty of care to Decedent, resulting in Decedent's suicide. Villanueva moves to dismiss this claim on the basis that Decedent's suicide was an unforeseeable intervening action that severed the chain of causation. (Villanueva Mot. 8–9.)

Under California law, proximate causation is a necessary element of a claim for negligence. *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008). "Proximate cause, or legal cause, is absent where an intervening act or event breaks the chain of causation between the defendant's conduct and the plaintiff's injuries as a matter of law." *Walsh v. Tehachapi Unified Sch. Dist.*, 997 F. Supp. 2d 1071, 1078 (9th Cir. 2014) (citing *Conn*, 591 F.3d at 1101); *Lombardo v. Huysentruyt*, 91 Cal. App. 4th 656, 665–66 (2001)). "Generally, an act is an intervening cause where it is unforeseeable or extraordinary." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009).

"[S]uicide has historically been viewed as an intervening event that *always* breaks the chain of causation, thereby precluding any tort liability for a suicide." *Walsh*, 997 F. Supp. 2d at 1080 (citing *Tate v. Canonica*, 180 Cal. App. 2d 898, 901–03, 913 (1960)). However, the Ninth Circuit has identified two exceptions to this general rule: (1) the widely recognized "uncontrollable impulse" test derived from *Tate v. Canonica*, 180 Cal. App. 2d 898 (1960), and (2) the "special relationship" exception laid out in *Nally v. Grace Community Church*, 47 Cal. 3d 278 (1988).

Under the uncontrollable impulse exception, "if the negligent wrong causes mental illness which results in an uncontrollable impulse to commit suicide, then the wrongdoer may be held liable for the death." *Tate*, 180 Cal. App. 2d at 915. In other words, suicide is *not* an intervening factor where a defendant's negligent actions cause an "uncontrollable impulse" to commit suicide. *Walsh*, 997 F. Supp. 2d at 1079.

Under the special relationship exception, "[c]ourts generally have imposed a duty to prevent suicide . . . where the defendant has physical custody and substantial

control over a person, or where the defendant has special training or expertise in mental illness and has sufficient control over a person to prevent the suicide." *Id.* at 1085. This exception typically is found where "defendant is a prison, jail, or hospital." *Id.*; *see also Campos v. Cty. of Kern*, No. 1:14-cv-01099-DAD-JLT, 2017 WL 915294, at *14 (E.D. Cal. Mar. 7, 2017) (collecting cases).

Here, Villanueva contends Plaintiff fails to adequately allege a basis for applying the uncontrollable impulse test. (Villanueva Mot. 9.) The Court disagrees. Plaintiff alleges that Decedent had a serious mental illness and that LASD "deprived [Decedent] of the necessary medication to manage his psychiatric disabilities." (FAC ¶¶ 17–18.) Further, Decedent allegedly received no other treatment for his condition, was not monitored adequately by staff, and was placed in a high-risk environment. (*Id.* ¶¶ 18–20.) Plaintiff alleges Villanueva caused this situation, through negligence in his performance of hiring subordinates, establishing policies and procedures to prevent the harm which befell Decedent, and enforcing those same policies and procedures. (*Id.* ¶ 7.) While it is true that there are no specific allegations of what mental illness Decedent had, nor what medicine he was prescribed to treat it, the deprivation of medication necessary to a seriously ill pre-trial detainee, along with the other allegations, support a reasonable inference that Villanueva's actions created an uncontrollable impulse. *See also Whooley v. Tamalpais Union High Sch. Dist.*, 399 F. Supp. 3d 986, 1000 (N.D. Cal. 2019) ("[W]hether [decedent] suffered from an uncontrollable impulse to end his life appears to be a question of fact that is inappropriate to decide at the pleading stage.").

Further, Plaintiff adequately establishes a duty to prevent suicide under the special relationship exception. Plaintiff alleges, among other things, that "Defendant failed to implement policies to properly monitor the cell of a known suicidal inmate who had attempted suicide only months before . . . and failed to ensure a policy that a suicidal inmate did not have access to an object that could be sued to hang himself." (Opp'n Villanueva Mot. 10; *see also* FAC ¶¶ 19–20, 27, 60.) Whereas Villanueva had

"physical custody and substantial control over" Decedent, these allegations are enough to impose a special duty on Villanueva to prevent Decedent's suicide. *See Walsh*, 997 F. Supp. 2d at 1085.

Assuming these allegations are true, Plaintiff has asserted a plausible theory of relief for negligence. It is plausible that Villanueva had a special duty of care to those in his custody, and that he breached that duty in a manner which caused a foreseeable injury to Decedent. Thus, to the extent Villanueva moves to dismiss Plaintiff's fourth claim for negligence, Villanueva's Motion is **DENIED**.

### 4. *Violation of California Government Code § 845.6 (Claim 5)*

With her fifth claim, Plaintiff alleges Villanueva violated California Government Code section 845.6 because he knew or had reason to know that Decedent needed immediate care and failed to take reasonable action to provide that care. (FAC ¶¶ 63–64).

Villanueva moves to dismiss this claim on grounds that (1) Plaintiff fails to allege that Villanueva had any direct contact with Decedent or any actual knowledge of Decedent's conditions; (2) the alleged conduct does not rise to the level of severity contemplated by section 845.6; and (3) Government Code section 855.6 provides further immunity from liability for incorrectly assessing whether a person has a hazardous physical or mental condition. (Villanueva Mot. 10–11.) These arguments are not persuasive.

Section 845.6 provides, in relevant part:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; *but*, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, *is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care*.

Cal. Gov. Code § 845.6 (emphases added).

"Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." *Jett*, 439 F.3d at 1099 (quoting *Watson v. State of California*, 21 Cal. App. 4th 836, 841 (1993)). That said, California courts have construed the provision to create limited liability only "when: (1) the public employee knows or has reason to know [of the] need, (2) of immediate medical care, and (3) fails to take reasonable action to summon such medical care." *Castaneda v. Dept. of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013); *Johnson v. Cty. of Los Angeles*, 143 Cal. App. 3d 298, 317 (1983) ("[M]erely calling a doctor or other trained health care provider to examine a prisoner may be sufficient.").

Here, Villanueva's main contention is that he was never in contact with Decedent prior to Decedent's death and, as a result, cannot be held liable under section 845.6. (Villanueva Mot. 10–11.) Regardless, Plaintiff has pleaded each required element as listed in *Castaneda*—she alleges that Villanueva knew or had reason to know of Decedent's mental condition and need of immediate medical care, and that care was totally denied. (*See* FAC ¶¶ 16, 18–20 (alleging that "Decedent was gravely disabled," "was deprived of the necessary medication to manage his psychiatric disabilities," and showed "behavior indicating a clear decompensation of Decedent's mental health status")); *see also Medina v. Cty. of Los Angeles*, No. CV 19-3808-GW-Ex, 2020 WL 3964793, at *14 (C.D. Cal. Mar. 9, 2020) (indicating that a supervisor could be held liable under section 845.6 depending on his "supervisory capacity/responsibility over the conduct of safety-checks").

Furthermore, "questions of Sheriffs' actual or constructive knowledge of Decedent's need for immediate care, and of Sheriffs' reasonable action to summon or not to summon such care, are questions of fact to be determined at trial," and Plaintiff has sufficiently alleged their existence to survive a 12(b)(6) motion. *Johnson*, 143 Cal. App. 3d at 317; *see Zeilman v. Cty. of Kern*, 168 Cal. App. 3d 1174, 1187 (1985) ("Regardless of how remote these possibilities may seem, the remoteness affects only plaintiff's difficulty of proof, i.e., plaintiff in the instant case may well

have a difficult time proving her claim against [defendant]. But difficulty in proof does not equate to resolution as a matter of law.")

Lastly, the Court notes that Government Code section 855.6 does not apply to the present situation. In relevant part, section 855.6 protects public employees from liability "for injury caused by the failure to make a physical or mental examination or to make an adequate . . . examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself. Cal. Gov. Code § 855.6. "While the immunity granted under this section is broad, it has been held that it does not extend to a situation where the defendant fails to provide medical care for a prisoner in obvious need of such care." *Lum v. Cty. of San Joaquin*, 756 F. Supp. 2d 1243, 1257 (E.D. Cal. 2010) (citing *Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 349 (1976)). The Court thus finds this code provision inapplicable, for reasons already discussed above.

For these reasons, the Court finds Plaintiff adequately alleges a violation of Government Code section 845.6. Accordingly, to the extent Villanueva moves to dismiss Plaintiff's fifth claim, Villanueva's Motion is **DENIED**.

### 5. *Violation of ADA and RA (Claim 6 against Villanueva)*

With her sixth claim, Plaintiff alleges Villanueva violated Title II of the ADA and section 504 of the RA. Villanueva moves to dismiss this claim on grounds that such claims can only be brought against a public entity and not an individual defendant. (Villanueva Mot. 13 (citing *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).) Plaintiff concedes this point and agrees to dismissal. (Opp'n Villanueva Mot. 11.) Therefore, Villanueva's Motion is **GRANTED** as to Plaintiff's sixth cause of action, which is **DISMISSED with prejudice** as to Villanueva.

### B. County's Motion to Dismiss

The Court now turns to the County's Motion. The County moves to dismiss the claims asserted against it, namely Plaintiff's second and sixth claims. (*See* Cty. Mot.)

### 1.    Section 1983 Liability: Monell (Claim 2)

With her second claim, Plaintiff brings a survivor claim under 42 U.S.C. § 1983 and *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). (FAC ¶¶ 43–50.)  The County moves to dismiss under Rule 12(b)(6).  (Cty. Mot. 5–8.)

As noted above, § 1983 allows for a civil action against any person who, under color of law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  While the statute does not define "person" or address whether a governmental unit may be sued under its provisions, the United States Supreme Court in *Monell* held that a local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694.

To hold a municipality liable for the actions of its officers and employees, a plaintiff must allege one of the following: "(1) that a [municipal] employee was acting pursuant to an expressly adopted official policy; (2) that a [municipal] employee was acting pursuant to a longstanding practice or custom; or (3) that a [municipal] employee was acting as a 'final policymaker.'"  *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).   Where there is a policy at play, plaintiff must prove "(1) that [plaintiff] possessed a constitutional right of which [they] were deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  Additionally, under some circumstances, a municipality can be held liable for failure to train its police officers.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  However, a governmental unit may not be liable under § 1983 simply based on a "respondeat superior theory."  *Monell*, 436 U.S. at 691.

Here, the County seeks to dismiss Plaintiff's *Monell* claim on grounds that (1) Plaintiff fails to sufficiently allege the existence of an unconstitutional policy,

custom, or practice of deliberate indifference, and (2) Plaintiff fails to sufficiently allege causation. (Cty. Mot. 5–8.)[6]  The Court addresses these arguments in turn.

### a.    Unconstitutional Policy, Custom, or Practice

First, the County argues that Plaintiff fails to allege facts that demonstrate the existence of an unconstitutional policy, custom, or practice of deliberate indifference. (Cty. Mot. 5–6.)  To be sure, "a plaintiff must do more than allege that a *Monell* defendant 'maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs' alleged elsewhere in the complaint." *Cain v. City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (C.D. Cal. Oct. 4, 2017) (quoting *A.E. ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (discussing pleading standard for *Monell* claims)).  "Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (i.e. excessive force) is insufficient." *Id.*

This Court explained in its previous order that Plaintiff's allegations in her initial Complaint presented little more than legal conclusions, and "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; (*see* Order Granting Mot. Dismiss Compl. 7).  The County now argues that Plaintiff has failed to meaningfully amend her claim, as "Plaintiff has not identified any expressly adopted policy" and "the FAC still fails to allege sufficient facts, rising above conclusory assertations, showing that Decedent's act of committing suicide was the result of a long-standing practice or custom." (Cty. Mot. 5.)

To the contrary, the Court finds that Plaintiff's newly added assertions create reasonable inferences which carry her claim through the Rule 12(b)(6) pleading standard.  In particular, Plaintiff's newly added allegations of repeated, systematic

---

[6] Because Plaintiff concedes she does not sufficiently allege a theory of ratification or failure to train to support her *Monell* claim, the Court need not address the County's arguments on those points. (*See* Opp'n County Mot. 7–8.)

constitutional violations, plus the new allegations of Decedent's experience at MCJ prior to April 6, 2019, sufficiently establish a plausible "policy, practice or custom." (*See* FAC ¶¶ 13–15, 22–27.)  These factual allegations support the legal framework of this claim, even if they do not outline the exact contours of the alleged policy, custom, or practice.  *See Cain*, 2017 WL 4410116, at *2 (citing *Dougherty*, 654 F.3d at 900) ("In certain circumstances, a failure to train, a failure to supervise, or a failure to respond to repeated constitutional violations of which an entity had notice may amount to a policy of deliberate indifference.").  Accordingly, the Court finds Plaintiff pleads facts sufficient to show the existence of a practice, custom, or policy giving rise to *Monell* liability.

### b.    Causation

The County also argues Plaintiff fails to allege facts that establish causation. (Cty. Mot. 8.)  Indeed, "[a] government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity *can be shown to be a moving force behind* a violation of constitutional rights."  *Dougherty*, 654 F.3d at 900 (citing *Monell*, 436 U.S. at 694) (emphasis added).

However, Plaintiff provides numerous allegations related to causation.  Plaintiff alleges, for instance, that "[d]ue to Defendants' deliberate indifference to the serious nature and life threatening condition of Decedent, and their failure to timely intervene to provide reasonable security, monitoring and safety, and psychiatric medical intervention necessary to prevent his efforts to harm himself, Decedent suffered preventable serious injury and harm."  (FAC ¶ 40.)  Plaintiff also alleges that despite knowledge of Decedent's condition and need for medication, the County "deprived [Decedent] of his medications for several weeks."  (*Id.* ¶¶ 14–15.)  In other words, but for the County's alleged policy, practice, or custom of providing inadequate mental health care to detainees, Decedent would have received necessary medication and proper supervision such that his death could have been prevented.  These alleged "facts demonstrat[e] that [the] constitutional deprivation was the result of a custom or

practice" and "the custom or practice was the 'moving force' behind [the] constitutional deprivation." *See Dougherty*, 654 F.3d at 900. The Court thus finds that Plaintiff sufficiently pleads causation with respect to her *Monell* claim.

In summary, Plaintiff sufficiently pleads a viable *Monell* claim. The Court therefore **DENIES** the County's Motion as to Plaintiff's second claim.

### 2.    *Violation of ADA and RA (Claim 6 against the County)*

As stated above, Plaintiff's sixth claim for relief alleges the County is liable for violations of Title II of the ADA and § 504 of the RA. (FAC ¶¶ 65–75.) The County moves to dismiss, arguing that Plaintiff's amended allegations are still insufficient to demonstrate Decedent was deliberately precluded access to treatment because of his disability and, "[a]t most, these allegations demonstrate inadequate identification of the need for treatment and not deliberate discrimination or preclusion based solely on Decedent's disability." (Cty. Mot. 10.)

Title II of the ADA states, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   The ADA bars public entities, including prisons, from both discriminating against disabled persons and "excluding the disabled from participating in or benefitting from a public program, activity, or service 'solely by reason of disability.'" *Lee*, 250 F.3d at 690–91; *see also Pierce v. Cty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008) ("It is undisputed that Title II applies to the . . . jails' services, programs, and activities for detainees.").

Similarly, Section 504 of the RA states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a).   As Title II of the ADA was expressly modeled after Section 504 of the RA, the analyses

of the rights and obligations under the two statutes is largely identical.  *See Pierce*, 526 F.3d at 1216 n.27.

With respect to a correctional facility, a plaintiff may allege disability discrimination by pleading "either (i) discrimination based on disparate treatment or impact, or (ii) denial of reasonable modifications or accommodations."  *Atayde v. NAPA State Hosp.*, 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017) (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086 (9th Cir. 2004)).  To show disparate treatment, the plaintiff must allege that other non-disabled individuals without the plaintiff's disability were treated more favorably.  *Id.* (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265–66 (9th Cir. 2004)).  To show disparate impact, a plaintiff must allege that a facially neutral policy has a significantly adverse or disproportionate impact on disabled persons.  *Id.*  (citing *Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1148 n.11 (N.D. Cal. 2016)).  And to show failure to accommodate, a plaintiff must allege that public entity knew of the plaintiff's disability but failed to provide reasonable accommodations.  *Id.* (citing *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (9th Cir. 2007)).  "A correctional facility's 'deliberate refusal' to accommodate plaintiff's disability-related needs violates the ADA and the RA."  *Id.* (citing *United States v. Georgia*, 546 U.S. 151, 157 (2006)).

Here, Plaintiff sufficiently alleges facts showing a deliberate refusal to accommodate Decedent's disability-related needs, which is, in turn, an ADA and RA violation.  Such a claim can be established by "expressly alleg[ing] that Defendants failed to provide [Decedent] with any access to mental health programs and services" or medication.  *Anderson v. Cty. of Siskiyou*, No. C 10-01428 SBA, 2010 WL 3619821, at *5 (N.D. Cal. Sept. 13, 2010).  Indeed, Plaintiff alleges that "Defendants knowingly and willfully deprived Barnett of his medications for several weeks" and Decedent "received no mental health evaluation or treatment, despite his known history of suicidal tendencies."  (FAC ¶¶ 15, 18.)  Further, Plaintiff alleges that the

County had knowledge or reason to know of Decedent's disability, pointing to a completed medical history, a job denial implicating his suicide attempt, and a required screening that would have revealed his condition.   (FAC ¶¶ 13–14, 17.)   These allegations suffice to state a failure to accommodate claim under the ADA and RA, because it is plausible that there was a deliberate refusal to accommodate.

Plaintiff pleads facts that plausibly show the County deliberately precluded Decedent from receiving necessary medication and treatment because of his disability, and the Court therefore **DENIES** the County's Motion as to Plaintiff's sixth claim for relief under the ADA and the RA.

## VI.    CONCLUSION

For the foregoing reasons, Villanueva's Motion is **GRANTED in part** and **DENIED in part**.  (ECF No. 36.)  Claims one, four, and five against Villanueva are sufficiently pled.  Claim three against Villanueva is **DISMISSED without prejudice**, but without current leave to amend.  Claim six against Villanueva is **DISMISSED with prejudice**.  Additionally, the County's Motion is **DENIED**.  (ECF No. 30.) Defendants shall file their Answer(s) to the FAC in accordance with Rule 12(a)(4)(A).

**IT IS SO ORDERED.**

March 4, 2021

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**